FILED

2011 JUL 19 AM 11: 08

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY _____

1  LAWRENCE J. HILTON (STATE BAR NO. 156524)
      (e-mail lhilton@oneil-llp.com)
2  WILLIAM E. HALLE (STATE BAR NO. 150686)
   JENNIFER SUN (STATE BAR NO. 238942)
3  O'NEIL LLP
   19900 MacArthur Boulevard
4  Suite 1050
   Irvine, California 92612
5  Telephone: (949) 798-0500
   Facsimile: (949) 798-0511
6
   Attorneys for Plaintiffs
7  HALLMARK INDUSTRIES, INC. and
   RICHARD H. CROWTHER III
8

9          **UNITED STATES DISTRICT COURT**

10     **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11              **EASTERN DIVISION**

| | |
|---|---|
| 12  HALLMARK INDUSTRIES, INC., a California corporation, and RICHARD H. CROWTHER III, an individual, | Case No. CIV **11 - 05914 RGK (SPx)** |
| 13 | |
| 14            Plaintiffs, | **COMPLAINT FOR:** |
| 15       v. | **(1) VIOLATIONS OF THE SHERMAN ACT [15 U.S.C. §§ 1 and 2];** |
| 16  PRIME-LINE PRODUCTS COMPANY, a California corporation; RICHARD H. CROWTHER, JR., an individual; DIANNE CROWTHER, an individual; and DOES 1 through 10, inclusive, | **(2) VIOLATIONS OF THE CLAYTON ACT [15 U.S.C. § 14];** |
| 17 | **(3) VIOLATIONS OF THE CARTWRIGHT ACT [Cal. Bus. & Prof. Code § 16720, et seq.];** |
| 18 | **(4) VIOLATIONS OF THE CALIFORNIA UNFAIR PRACTICES ACT [Cal. Bus. & Prof. Code § 17000, *et seq.*];** |
| 19            Defendants. | **(5) BREACH OF CONTRACT;** |
| 20 | **(6) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| 21 | **(7) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP;** |
| 22 | **(8) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** |
| 23 | |
| 24 | |
| 25 | |
| 26 | **JURY TRIAL DEMANDED** |
| 27 | |
| 28 | |

#100326 v199378 v1

COMPLAINT

Plaintiffs HALLMARK INDUSTRIES, INC. and RICHARD H. CROWTHER III (sometimes collectively referred to as "Plaintiffs"), for their causes of action against Defendants PRIME-LINE PRODUCTS COMPANY, RICHARD H. CROWTHER, JR., DIANNE CROWTHER, and DOES 1 through 10, (sometimes collectively referred to as "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. section 1331 and 15 U.S.C. section 15.  Venue is proper in this District under 28 U.S.C. section 1391(b) in that one or more of the Defendants resides in this District and the events giving rise to the claims asserted herein took place within this District or had effects within this District.

## THE PARTIES

2.      Plaintiff HALLMARK INDUSTRIES, INC. ("Hallmark") is a corporation duly organized and existing under the laws of the State of California, having its principal place of business in the County of San Bernardino, State of California.

3.      Plaintiff RICHARD H. CROWTHER III ("Rich") is an individual residing in the County of San Bernardino, State of California.  Rich is the owner of 2.57% of the common shares of Prime-Line Products Company, and also owns 20,498 shares of the Company's Employee Stock Ownership Plan (the "ESOP").

4.      Plaintiffs are informed and believe and, on that basis, allege that Defendant PRIME-LINE PRODUCTS COMPANY ("Prime-Line" or the "Company") is a corporation organized and existing under the laws of the State of California, having its principal place of business in the County of San Bernardino, State of California.

5.      Plaintiffs are informed and believe and, on that basis, allege that Defendant RICHARD H. CROWTHER, JR. ("Dick") is an individual residing in the County of San Bernardino, State of California.  At all times material to the

1  allegations herein, Dick has been a shareholder, Chairman of the Board of Directors
2  and Chief Executive Officer of Prime-Line.

3      6.      Plaintiffs are informed and believe and, on that basis, allege that
4  Defendant DIANNE CROWTHER ("Dianne") is an individual residing in the
5  County of San Bernardino, State of California.  At all times material to the
6  allegations herein, Dianne has been Dick's spouse.

7      7.      Plaintiffs are unaware of the true names and capacities, whether
8  individual, associate, corporate, or otherwise, of Defendants Does 1 through 10,
9  inclusive, or any of them, and therefore sue said Defendants, and each of them, by
10 such fictitious names.  Plaintiffs will seek leave of this Court to amend this
11 Complaint when the same are ascertained.

12     8.      Plaintiffs are informed and believe and, on that basis, allege that unless
13 otherwise specified, each of the Defendants, at all times herein mentioned, was the
14 agent, servant, trustee, principal, employee, and/or joint venturer of the other
15 remaining Defendants, that the acts of each Defendant were within the course and
16 scope of their agency, service, and employment and with the permission and consent
17 of each other Defendant, and that each Defendant has ratified the conduct of the
18 others.

19                              **FACTUAL BACKGROUND**

20     9.      Prime-Line was founded in 1978 by Dick Crowther and George
21 Sutphen.  At all times relevant to the allegations herein, Prime-Line has been
22 engaged in the business of manufacturing, sale and distribution of window and door
23 replacement parts to retailers.  Prime-Line is the largest supplier of window and
24 door hardware in North America.

25     10.     Prime-Line established its ESOP in 1990.

26     11.     In 2000, Mr. Sutphen retired and sold his shares to Dick (80,500
27 shares), Rich (57,500 shares) and the ESOP (463,925 shares).  From and after 2000,
28 Dick was the controlling shareholder of Prime-Line.

### *Rich's Employment With The Company*

12.     Rich joined Prime-Line as an employee in January 1992, and served in various positions with the Company.  In 1999, Rich became a member of the Company's Board of Directors (the "Board").  In February, 2001, the Board appointed Rich as President.  Rich served as the Company's President until November 2010.  During his tenure as President of Prime-Line, Rich developed and maintained valuable relationships with suppliers and customers of Prime-Line, and oversaw a lengthy period of growth in the Company's business, including the Company's acquisitions and asset purchases of four other companies.

13.     Repeatedly throughout Rich's tenure as President of Prime-Line, Dick, on behalf of Prime-Line and on his own behalf as controlling shareholder of Prime-Line, promised Rich that Rich's employment would continue until Dick stepped down as Prime-Line's Chief Executive Officer, and at that time Rich would be Dick's successor in running the Company.  Dick made these promises directly to Rich and also in the presence of third parties.

14.     During the entire period that Rich served as President of Prime-Line, his compensation was significantly below the market rate for individuals performing similar duties in companies with comparable sales.  A compensation consultant hired by Prime-Line confirmed that Rich's compensation was "blatantly" below market.  By contrast, the same consultant concluded that Dick's compensation as Chief Executive Officer was above the market rate for comparable executives.

15.     The Company also promised Rich that he would be entitled to deferred compensation.  Specifically, the Company promised Rich that he would be entitled to participate in a non-qualified deferred compensation plan, which would provide for a minimum Company contribution during each year of Rich's employment with the Company equal to the allocation Rich would have been entitled to if he was not prohibited from receiving such an allocation under the ESOP.

16.     Rich was willing to, and did, continue to serve as Prime-Line's President despite the low compensation because he believed that Dick and Prime-Line intended to honor their agreement that Rich would succeed Dick in his role of running the Company when Dick retired.  Rich also believed the Company would honor its promise to provide him with deferred compensation.  Rich's beliefs were based on, among other things, the Company's repeated representations that it was working on a deferred compensation plan and Dick's assurances to Rich that Prime-Line would make Rich "a very wealthy man."

17.     Dick also promised Rich that Dick, as the controlling shareholder of Prime-Line, would vote his shares in a manner that supported Rich's continued employment with the Company and Rich's eventual succession to Dick's role in running the Company.

### *Dianne Joins Prime-Line And Begins To Disrupt The Business*

18.     In or around November, 2008, Dick consulted with Rich about the prospect of hiring Dianne to work at the Company.  Rich did not believe it would be in the best interests of the Company to hire Dianne as an employee, and he strongly advised Dick not to have Dianne hired as an employee.  Plaintiffs are informed and believe and, on that basis, allege that Dick also consulted with several other individuals, including another executive of Prime-Line, about hiring Dianne as an employee and each of the individuals advised Dick against hiring Dianne.

19.     Despite the advice he received, Dick informed Rich that Dianne would be starting as an employee of Prime-Line beginning in early 2009, and she began her employment with the Company in February, 2009.

20.     Within a few days of her arrival as an employee, Dianne began to harass employees and create discord among the Company staff.  Among other things, Dianne accused a Company employee of sending sexually explicit text messages, only to later learn that she had accused the wrong employee.  Dianne also engaged in disruptive behavior, such as screaming at Dick in the presence of

1    Company employees, and attempting to undermine Rich's authority as the

2    Company's President.  Dianne also demanded that Prime-Line accounting personnel

3    approve payments by the Company for her and Dick's personal expenses.

4         21.    Over the ensuing months, several Prime-Line employees came to Rich

5    to express their frustration and concern about the way they were treated by Dianne.

6    Rich met with Dick on several occasions to discuss the effects Dianne's conduct

7    was having on the Company.  Rich advised Dick that Dianne's actions could subject

8    the Company to liability for employee harassment and corporate waste, and that her

9    efforts to undermine Rich's authority could have serious adverse consequences to

10   the Company.  However, Dick took no action to terminate Dianne as an employee or

11   to otherwise control her behavior.

12        22.    By March, 2010, Rich was sufficiently concerned about Dianne's

13   behavior and the damage it could case the Company that he believed it was

14   appropriate to formally notify the remaining members of the Board.  On March 31,

15   2010, Rich sent a memorandum to Bob Hiamshon and David Johanson detailing

16   some of Dianne's actions and his efforts to resolve the problem with Dick.

17        23.    Messrs. Hiamshon and Johanson met with Dick and Dianne and came

18   up with the framework of a plan that would result in both Dick and Dianne leaving

19   their employment at Prime-Line, with Dick staying on in a consulting capacity.

20   However, the plan was not implemented and, by June, 2010, the problems had not

21   been resolved.

22        24.    On June 18, 2010, Dianne left a written note with a Prime-Line

23   employee, Pam Machain, stating: "Pam—Found out tonight people at Prime Line

24   are afraid of me.  I have quit and Dick is joining me."  Plaintiffs are informed and

25   believe and, on that basis, allege that Dick and Dianne left in late June for a trip to

26   Hawaii.

27        25.    On July 1, 2010, Dick's long-time assistant provided Rich with her

28   resignation.  When Rich asked the reasons for her resignation, she stated that one of

1 | the reasons was that Dianne was cruel to her and made her life at Prime-Line
2 | miserable.

3 |       26.    On July 12, 2010, Dick and Dianne returned to work, never
4 | acknowledging Dianne's written notice that they had quit.

5 |         ***Dianne Convinces Dick To Oust Rich As President Of Prime-Line***

6 |       27.    Plaintiffs are informed and believe and, on that basis, allege that during
7 | their absence from the Company, Dianne persuaded Dick that notwithstanding his
8 | and the Company's promises to Rich, Dick should use his influence to cause Rich to
9 | be terminated from Prime-Line.

10 |       28.    On July 16, 2010, Rich learned that Dick was considering interviewing
11 | candidates to replace Rich as President of the Company.

12 |       29.    On July 22, 2010, Rich left for a family vacation in New Hampshire.
13 | While away on vacation, Rich learned that Dick had interviewed an individual
14 | named Ron Turk to take over Rich's position at the Company, and Dick was
15 | attempting to schedule a Board meeting during Rich's absence to approve Mr.
16 | Turk's hiring.

17 |       30.    Dick's efforts to schedule a Board meeting in Rich's absence were
18 | unsuccessful, and the Board met on August 9, 2010 after Rich returned from his
19 | family vacation.  Although she was neither a Board member nor an executive
20 | employee of the Company, Dianne was invited to, and did, attend the August 9,
21 | 2010 Board meeting.  At the outset of the meeting, one of the Board members, Terry
22 | Kokot, stated that he was against any effort to terminate Rich's employment, and
23 | further stated his satisfaction with the manner in which Rich had performed his
24 | duties for the Company.  Dick responded by stating that "we are not here to
25 | terminate Rich."

26 |       31.    At the August 9, 2010 Board meeting, Ron Turk's employment as the
27 | Company President was approved.  The Board further resolved to engage in
28 | negotiations with Rich regarding a new position with the Company, and placed Rich

1  on a ninety-day leave of absence during which the parties were to engage in good

2  faith negotiations.

3       32.    Although the leave of absence period was extended through November,

4  30, 2010, the Company refused to engage in any bona fide negotiations over a future

5  role for Rich.  Rather, the Company attempted to fabricate "cause" for Rich's

6  termination, including making false allegations that Rich had removed files from his

7  computer—a charge the Company's attorneys later acknowledged was untrue.

8       33.    On November 28, 2010, Rich notified the Company through his

9  counsel that he intended to return to work on December 1, 2010, the first day after

10  his leave of absence expired.

11       34.    On November 30, 2010, Mr. Turk sent a letter to Rich stating that his

12  employment with the Company was terminated effective as of November 30, 2010.

13              *Defendants Engage In Improper And Illegal Conduct*

14                  *To Prevent Rich From Lawfully Competing*

15       35.    Following his termination from Prime-Line, Rich resolved to move

16  forward with his own businesses in order to make a living and provide for his

17  family.  Among other things, Rich planned to expand the business of Hallmark, a

18  company he owned jointly with Dick until September, 2010, when Dick transferred

19  his 50% ownership to Rich.

20       36.    For many years, Hallmark operated out of Prime-Line's facility in San

21  Bernardino and had a cooperative relationship through which Hallmark would

22  jointly order products with Prime-Line, and Hallmark would sell certain products to

23  Prime-Line at discounted prices.  Rich was willing to continue Hallmark's long-

24  standing cooperative arrangement with Prime-Line, including the sale of certain

25  products to Prime-Line at discounted prices, if Prime-Line wanted to do so.

26       37.    Rich also planned to form a venture through which he would compete

27  with Prime-Line by continuing the relationships with vendors and customers that he

28  had developed and maintained through his 18-year career at Prime-Line.

1  Specifically, Rich planned to enter the market for sale and distribution of window

2  and door replacement parts to retailers, with a specific focus on a discrete sub-

3  market for the sale of window and door replacement parts to "maintenance and

4  repair organizations," known in the industry as "MROs."

5       38.    Plaintiffs are informed and believe and, on that basis, allege that Prime-

6  Line has at least 60% of the share of the market for the sale of window and door

7  replacement parts to MROs in North America.  Defendants knew Rich would be a

8  formidable competitor in that market due to his experience in the industry and the

9  fact that he had close relationships with many of Prime-Line's vendors and

10 customers.  Following Rich's termination by Prime-Line, Rich and Hallmark made

11 substantial preparations to enter the market for the sale of window and door

12 replacement parts to MROs in North America.

13      39.    Plaintiffs are informed and believe and, on that basis, allege that Prime-

14 Line, acting through and under the direction of Dick and Dianne, has engaged in a

15 course of conduct designed to use Prime-Line's dominant position in the MRO

16 Market to exclude Rich and Hallmark from competing in that market.  Among other

17 things, Hallmark and Rich have been informed by vendors that Prime-Line has

18 threatened to terminate its relationship with the vendors unless they agree not to do

19 business with Rich, Hallmark, or any company with which Rich is affiliated.

20 Plaintiffs are informed and believe and, on that basis, allege that Prime-Line has

21 also threatened to terminate its relationship with customers unless the customers

22 agree not to do business with Rich, Hallmark, or any company with which Rich is

23 affiliated.

24      40.    Prime-Line has also terminated its long-standing cooperative agreement

25 with Hallmark regarding joint ordering of products and use of Prime-Line's facility.

26      41.    Defendants' attempts to exclude Rich and Hallmark from entering the

27 relevant market have been successful in that Rich has been unable to obtain products

28 for sale to customers, and has been unable to obtain orders from customers, due to

1   the exclusive dealing agreements Prime-Line has forced on its suppliers and

2   customers.  In the absence of such unlawful conduct by Defendants, Rich and

3   Hallmark would have been able to substantially increase competition in the MRO

4   Market in North America, including the expansion of output and lowering of prices

5   in the relevant market.

6   ## RELEVANT MARKETS AND EFFECTS ON COMMERCE

7          42.    As alleged hereinabove, the relevant product market is the market for

8   sale and distribution of window and door replacement parts to retailers.  Within the

9   relevant product market is a discrete sub-market for the sale of window and door

10  replacement parts to MROs.  It is in this sub-market, referred to hereinafter as the

11  "MRO Market," where the conduct alleged hereinbelow has substantially restrained

12  competition.  The relevant geographic market consists of North America.

13         43.    Plaintiffs are informed and believe and, on that basis, allege that Prime-

14  Line is the largest supplier of window and door hardware in North America, and that

15  Prime-Line has significant market power within the MRO Market, with in excess of

16  60% of the market share in North America.

17  ## FIRST CAUSE OF ACTION

18  **(Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 Against**

19  **Defendants PRIME-LINE, DICK, DIANNE and DOES 1 through 5)**

20         44.    Plaintiff realleges and incorporates herein by this reference as though

21  set forth in full each and every allegation contained in Paragraphs 1 through 43,

22  inclusive.

23         45.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1

24  through 5, as alleged hereinabove, constitute one or more unlawful contracts,

25  combinations or conspiracies to restrain trade in interstate commerce in the relevant

26  product sub-market and geographic market in violation of Section 1 of the Sherman

27  Act.

28

46.     The actions of Defendants Prime-Line, Dick, Dianne and Does 1 through 5, as alleged hereinabove, caused injury not only to competition but to Rich and Hallmark individually, by reason of which Rich and Hallmark have suffered actual damages in an amount to be proved at trial, which damages shall be trebled and awarded to Rich and Hallmark as provided in Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15.  Plaintiffs are also entitled to recover their reasonable attorneys' fees as prevailing plaintiffs.

47.     Unless the actions of Defendants Prime-Line, Dick, Dianne and Does 1 through 5, as alleged hereinabove are enjoined, competition in the relevant markets will continue to be irreparably harmed in a manner that cannot be compensated in monetary damages.

## SECOND CAUSE OF ACTION

### (Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 Against Defendants PRIME-LINE, DICK, DIANNE and DOES 1 through 5)

48.     Plaintiffs reallege and incorporate herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 47, inclusive.

49.     The actions of Defendants Prime-Line, Dick, Dianne and Does 1 through 5, as alleged hereinabove constitute a course of conduct designed to monopolize the MRO Market in North America in violation of Section 2 of the Sherman Act.

50.     In engaging in the above-described conduct, Defendants Prime-Line, Dick, Dianne and Does 1 through 5 have acted with the specific intent to destroy competition in the MRO Market in North America and, given Prime-Line's dominant market share as alleged above, there is a dangerous probability that Defendants' efforts will succeed.

51.     The actions of Defendants Prime-Line, Dick, Dianne and Does 1 through 5, as alleged hereinabove, have caused injury not only to competition but to

1   Hallmark and Rich individually, by reason of which Hallmark and Rich have
2   suffered actual damages in an amount to be proved at trial, which damages shall be
3   trebled and awarded to Hallmark and Rich as provided in Section 4 of the Clayton
4   Antitrust Act, 15 U.S.C. § 15.  Plaintiffs are also entitled to recover their reasonable
5   attorneys' fees as prevailing plaintiffs.

6          52.    Unless the actions of Defendants Prime-Line, Dick, Dianne and Does 1
7   through 5 as alleged hereinabove are enjoined, competition in the relevant market
8   will continue to be irreparably harmed in a manner that cannot be compensated in
9   monetary damages.

## THIRD CAUSE OF ACTION

### (Violation of the Clayton Act, 15 U.S.C. § 14 Against Defendants PRIME-LINE, DICK, DIANNE and DOES 1 through 5)

13         53.    Plaintiff realleges and incorporates herein by this reference as though
14   set forth in full each and every allegation contained in Paragraphs 1 through 52,
15   inclusive.

16         54.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1
17   through 5 as alleged hereinabove constitute unlawful agreements not to deal in the
18   goods of a competitor, in violation of the Clayton Antitrust Act, 15 U.S.C. § 14.

19         55.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1
20   through 5, as alleged hereinabove, have caused injury not only to competition but to
21   Hallmark and Rich individually, by reason of which Hallmark and Rich have
22   suffered actual damages in an amount to be proved at trial, which damages shall be
23   trebled and awarded to Hallmark and Rich as provided in Section 4 of the Clayton
24   Antitrust Act, 15 U.S.C. § 15.  Plaintiffs are also entitled to recover their reasonable
25   attorneys' fees as prevailing plaintiffs.

26         56.    Unless the actions of Defendants Prime-Line, Dick, Dianne and Does 1
27   through 5 as alleged hereinabove are enjoined, competition in the relevant market
28

1   will continue to be irreparably harmed in a manner that cannot be compensated in

2   monetary damages.

### FOURTH CAUSE OF ACTION

**(Violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16720, et seq.**

**Against Defendants PRIME-LINE, DICK, DIANNE and DOES 1 through 5)**

6         57.    Plaintiff realleges and incorporates herein by this reference as though

7   set forth in full each and every allegation contained in Paragraphs 1 through 56,

8   inclusive.

9         58.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1

10   through 5, as alleged hereinabove, constitute one or more unlawful combinations of

11   capital, skill or acts by two or more persons that have the effect of unreasonably

12   restraining trade.

13         59.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1

14   through 5, as alleged hereinabove, caused injury not only to competition but to

15   Hallmark and Rich individually, by reason of which Hallmark and Rich have

16   suffered actual damages in an amount to be proved at trial, which damages shall be

17   trebled and awarded to Hallmark and Rich as provided in Section 16750(a) of the

18   Cartwright Act, Cal. Bus. & Prof. Code § 16750(a).  Plaintiffs are also entitled to

19   recover their reasonable attorneys' fees as prevailing plaintiffs.

20         60.    Unless the actions of Defendants Prime-Line, Dick, Dianne and Does 1

21   through 5, as alleged hereinabove are enjoined, competition in the relevant markets

22   will continue to be irreparably harmed in a manner that cannot be compensated in

23   monetary damages.

### FIFTH CAUSE OF ACTION

**(Violations Of Cal. Bus. & Prof. Code § 17000, et seq. Against**

**Defendants PRIME-LINE, DICK, DIANNE and DOES 1 through 5)**

27         61.    Plaintiff realleges and incorporates herein by this reference as though

28   set forth in full each and every allegation contained in Paragraphs 1 through 60,

1 | inclusive.

2 |      62.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1

3 | through 5, as alleged hereinabove, constitute the use of threats, intimidation, and/or

4 | boycotts designed to prevent fair and honest competition in the relevant market in

5 | violation of Cal. Bus. & Prof. Code §§ 17001 and 17046. The agreements between

6 | Prime-Line and its vendors and customers not to deal with Rich or Hallmark

7 | constitute the use of collusion in violation of Cal. Bus. & Prof. Code §§ 17001 and

8 | 17048.

9 |      63.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1

10 | through 5, as alleged hereinabove, have caused injury to Hallmark and Rich

11 | individually, by reason of which Hallmark and Rich have suffered actual damages in

12 | an amount to be proved at trial, which damages shall be trebled and awarded to

13 | Hallmark and Rich as provided in Cal. Bus. & Prof. Code §§ 17082. Plaintiffs are

14 | also entitled to recover their reasonable attorneys' fees as prevailing plaintiffs.

15 |      64.    Unless the actions of Defendants Prime-Line, Dick, Dianne and Does 1

16 | through 5 as alleged hereinabove are enjoined, competition in the relevant market

17 | will continue to be irreparably harmed in a manner that cannot be compensated in

18 | monetary damages.

## SIXTH CAUSE OF ACTION

### (Breach of Contract Against Defendant PRIME-LINE)

21 |      65.    Plaintiff realleges and incorporates herein by this reference as though

22 | set forth in full each and every allegation contained in Paragraphs 1 through 34,

23 | inclusive.

24 |      66.    Defendant Prime-Line and Rich agreed that in exchange for Rich's

25 | continued service to the Company at below-market compensation rates, Rich would

26 | (1) have continuous employment with the Company and would succeed Dick in his

27 | role of running the Company when Dick stepped down, and (2) would receive

28 | deferred compensation for each year of employment equal to the allocation Rich

1  would have received if he was not prohibited from receiving such an allocation

2  under the ESOP.

3      67.    In furtherance of that agreement (the "Prime-Line Agreement"), and in

4  reliance on the promises made by Prime-Line, Rich performed all of the obligations

5  required of him under the Prime-Line Agreement.  Among other things, Rich

6  continued to faithfully and effectively perform his duties as President of the

7  Company while being compensated at below-market rates, and Rich did not pursue

8  other career alternatives that were available to him.

9      68.    Prime-Line breached the agreement with Rich by terminating Rich's

10 employment with the Company.

11     69.    As a direct and proximate result of Prime-Line's breach of the Prime-

12 Line Agreement, Rich has suffered actual damages in an amount to be proved at

13 trial.

14              **SEVENTH CAUSE OF ACTION**

15          **(Breach of Covenant of Good Faith And Fair Dealing**

16                  **Against Defendant PRIME-LINE)**

17     70.    Plaintiff realleges and incorporates herein by this reference as though

18 set forth in full each and every allegation contained in Paragraphs 1 through 34 and

19 65 through 69, inclusive.

20     71.    The Prime-Line Agreement referred to above contained an implied

21 covenant of good faith and fair dealing, which obligated Defendant Prime-Line to

22 perform the terms and conditions of the agreement fairly and in good faith and to

23 refrain from doing any act that would prevent or impede Rich from performing any

24 or all of the conditions of the contract that he agreed to perform, or any act that

25 would deprive Rich of the benefits of the contract.

26     72.    Rich performed all the duties and conditions of the Prime-Line

27 Agreement.

28

73.     Prime-Line knew that Rich had fulfilled all of his duties and conditions under the Prime-Line Agreement.

74.     Prime-Line breached the implied covenant of good faith and fair dealing under the Prime-Line Agreement by terminating Rich's employment with the Company intentionally, maliciously, and without probable cause, in bad faith and for reasons extraneous to the contract.  In fact, Prime-Line discharged Rich, not for reasons related to his performance, but because he was attempting to have Dianne removed as an employee due to conduct that Rich, in good faith and in a reasonable, appropriate, and businesslike manner, had determined were disruptive and harmful to the Company.

75.     Such motives were retaliatory in nature and extraneous to the employment relationship and were intended to deprive Rich of the benefits of the Prime-Line Agreement.

76.     As a direct and proximate result of Prime-Line's breach of the implied covenant of good faith and fair dealing, Rich has suffered actual damages in an amount to be proved at trial.

## EIGHTH CAUSE OF ACTION

### (Breach of Contract Against Defendant DICK)

77.     Plaintiff realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 34, inclusive.

78.     Defendant Dick and Rich agreed that in exchange for Rich's continued service to the Company at below-market compensation rates, Dick, in his capacities as a shareholder, Chairman of the Board and Chief Executive Officer of the Company, would support Rich's continuous employment with the Company and Rich's succession to Dick's role of running the Company when Dick stepped down.

79.     In furtherance of that agreement (the "Succession Agreement"), and in reliance on the promises made by Dick, Rich performed all of the obligations

16

1  required of him under the agreement.  Rich continued to faithfully and effectively
2  perform his duties as President of the Company while being compensated at below-
3  market rates, and Rich did not pursue other career alternatives that were available to
4  him.  Rich's actions benefited not only the Company, but Dick personally.

5      80.    Dick breached the Succession Agreement by failing to support Rich's
6  continued employment with the Company, and by supporting and orchestrating his
7  termination from the Company.

8      81.    As a direct and proximate result of Dick's breach of his agreement with
9  Rich, Rich has suffered actual damages in an amount to be proved at trial.

10                        **NINTH CAUSE OF ACTION**

11              **(Breach of Covenant of Good Faith And Fair Dealing**

12                        **Against Defendant DICK)**

13     82.    Plaintiff realleges and incorporates herein by this reference as though
14  set forth in full each and every allegation contained in Paragraphs 1 through 34 and
15  77 through 81, inclusive.

16     83.    The Succession Agreement referred to above contained an implied
17  covenant of good faith and fair dealing, which obligated Defendant Dick to perform
18  the terms and conditions of the agreement fairly and in good faith and to refrain
19  from doing any act that would prevent or impede Rich from performing any or all of
20  the conditions of the contract that he agreed to perform, or any act that would
21  deprive Rich of the benefits of the contract.

22     84.    Rich performed all the duties and conditions of the Succession
23  Agreement.

24     85.    Dick knew that Rich had fulfilled all of his duties and conditions under
25  the Succession Agreement.

26     86.    Dick breached the implied covenant of good faith and fair dealing
27  under the Succession Agreement by failing to support Rich's continued employment
28  with the Company, and by supporting and orchestrating his termination from the

1  Company without cause, in bad faith and for reasons extraneous to the contract.  In
2  fact, Dick used his authority to cause Prime-Line to discharge Rich, not for reasons
3  related to his performance, but because Rich was attempting to have Dianne
4  removed as an employee due to conduct that Rich, in good faith and in a reasonable,
5  appropriate, and businesslike manner, had determined were disruptive and harmful
6  to the Company.

7       87.    Such motives were retaliatory in nature and extraneous to the
8  employment relationship and were intended to deprive Rich of the benefits of the
9  Succession Agreement.

10       88.    As a direct and proximate result of Dick's breach of the implied
11  covenant of good faith and fair dealing, Rich has suffered actual damages in an
12  amount to be proved at trial.

### TENTH CAUSE OF ACTION

**(Tortious Interference With Contractual Relations**

**Against Defendant DIANNE)**

16       89.    Plaintiff realleges and incorporates herein by this reference as though
17  set forth in full each and every allegation contained in Paragraphs 1 through 34 and
18  65 through 88, inclusive.

19       90.    Defendant Dianne was aware of the Prime-Line Agreement between
20  the Company and Rich, and was also aware of the Succession Agreement between
21  Dick and Rich.

22       91.    Defendant Dianne influenced and persuaded Dick to breach his
23  agreement (the Succession Agreement) with Rich.  Dianne also influenced and
24  persuaded Dick in his capacity as a shareholder, Chairman of the Board and Chief
25  Executive Officer to cause the Company to breach the Prime-Line Agreement with
26  Rich.

27       92.    Dianne's actions regarding the Succession Agreement were successful
28  in that Dick breached the Succession Agreement with Rich.

93.     Dianne's actions regarding the Prime-Line Agreement also were successful in that Dick used his positions as a shareholder, Chairman of the Board and Chief Executive Officer to cause the Company to breach the Prime-Line Agreement with Rich.

94.     As a direct and proximate result of the actions of Defendant Dianne, Rich has suffered damages in an amount to be proved at trial.

95.     The actions of Defendant Dianne, as alleged hereinabove, were done with oppression, fraud or malice within the meaning of California Civil Code section 3294 such that an award of punitive or exemplary damages is appropriate.

## ELEVENTH CAUSE OF ACTION

**(Tortious Interference With Prospective Economic Advantage Against Defendants PRIME-LINE, DICK, DIANNE and DOES 6 through 10)**

96.     Plaintiff realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 64, inclusive.

97.     Rich has economic relationships with vendors and customers that were developed and maintained through the course of his 18-year career at Prime-Line. When Rich was terminated as an employee of Prime-Line, Rich intended to continue to work in the same industry, and Rich had a reasonable expectation that he was likely to benefit economically in the future from those relationships.

98.     Defendants Prime-Line, Dick, Dianne and Does 6 through 10, inclusive, had knowledge of Rich's relationships with the vendors and customers.

99.     Defendants Prime-Line, Dick, Dianne and Does 6 through 10, inclusive engaged in intentional, unlawful and deceptive acts designed to disrupt the economic relationships Rich had with vendors and customers; namely, to coerce and induce vendors and customers to refrain from doing business with Rich in favor of Prime-Line.

1      100.   The actions of Defendants Prime-Line, Dick, Dianne and Does 6

2 through 10, inclusive have caused actual disruption of the relationships between

3 Rich and the vendors and customers.

4      101.   As a direct and proximate result of the actions of Defendants Prime-

5 Line, Dick, Dianne and Does 6 through 10, inclusive, Rich has suffered damages in

6 an amount to be proved at trial.

7      102.   The actions of Defendants Prime-Line, Dick, Dianne and Does 6

8 through 10, inclusive, as alleged hereinabove, were done with oppression, fraud or

9 malice within the meaning of California Civil Code section 3294 such that an award

10 of punitive or exemplary damages is appropriate.

11      103.   Unless the actions of Defendants Prime-Line, Dick, Dianne and Does 1

12 through 5 as alleged hereinabove are enjoined, competition in the relevant market

13 will continue to be irreparably harmed in a manner that cannot be compensated in

14 monetary damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

1.    On the First, Second, Third, Fourth and Fifth Causes of Action, for
preliminary and permanent injunctive relief, for treble damages and for an award of
reasonable attorneys' fees;

2.    On the Sixth, Seventh, Eighth and Ninth Causes of Action, for
compensatory damages;

3.    On the Tenth Cause of Action, for compensatory and exemplary
damages;

4.    On the Eleventh Cause of Action, for preliminary and permanent
injunctive relief, for compensatory damages and exemplary damages;

///

///

///

1       5.      On all Causes of Action, for costs of suit incurred herein; and

2       6.      For such other and further relief as the Court deems proper and just.

3  DATED:  July 18, 2011           O'NEIL LLP

4                                 LAWRENCE J. HILTON
                               JENNIFER SUN

5

6                  By: _____
                              Lawrence J. Hilton

7                  Attorneys for Plaintiffs

8                  HALLMARK INDUSTRIES, INC. and
                RICHARD H. CROWTHER III

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby

3    demand a jury trial on all issues triable to a jury.

4

5    DATED:  July 18, 2011                    O'NEIL LLP
                                              LAWRENCE J. HILTON
6                                             JENNIFER SUN

7

8                                             By: _____
                                                   Lawrence J. Hilton
9
                                              Attorneys for Plaintiffs
10                                            HALLMARK INDUSTRIES, INC. and
                                              RICHARD H. CROWTHER III
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#100326 v199378 v1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Sheri Pym.

The case number on all documents filed with the Court should read as follows:

## CV11- 5914 RGK (SPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.


All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501


Failure to file at the proper location will result in your documents being returned to you.

Lawrence J. Hilton (State Bar No. 156524)
William E. Halle (State Bar No. 150686)
Jennifer Sun (State Bar No. 238942)
O'Neil LLP
19900 MacArthur Blvd., Suite 1050
Irvine, CA 92612

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

HALLMARK INDUSTRIES, INC., a California corporation, and RICHARD H. CROWTHER III, an individual,

PLAINTIFF(S)

v.

PRIME-LINE PRODUCTS COMPANY, a California corporation; RICHARD H. CROWTHER, JR., an individual; DIANNE CROWTHER, an individual; and DOES 1 through 100, inclusive,   DEFENDANT(S).

CASE NUMBER

CV 11 - 05914 RGK (SPx)

**SUMMONS**

TO:   DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Lawrence J. Hilton _____, whose address is O'Neil LLP; 19900 MacArthur Blvd., Suite 1050; Irvine, CA 92612 _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Dated: JUL 19 2011 _____

Clerk, U.S. District Court

ADRIENE MORRIS

By: _____
        Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                   SUMMONS

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
HALLMARK INDUSTRIES, INC.,
RICHARD H. CROWTHER III

**DEFENDANTS**
PRIME-LINE PRODUCTS COMPANY,
RICHARD H. CROWTHER, JR.
DIANNE CROWTHER

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Lawrence J. Hilton
O'Neil LLP- 19900 MacArthur Blvd., Suite 1050; Irvine, CA 92612
T: (949) 798-0500

**Attorneys (If Known)**

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** – For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No        ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. §§ 1,2; Violations of Sherman, Clayton and Cartwright Acts; Breach of Contract

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☑ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: **CV 11 - 05914 RGK**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| HALLMARK INDUSTRIES, INC. RICHARD H. CROWTHER III | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| PRIME-LINE PRODUCTS COMPANY RICHARD H. CROWTHER DIANNE CROWTHER | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| ALL CLAIMS | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date 7/18//11

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |