COPY

FILED

2012 APR 11 AM 11:42
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

1  LAWRENCE J. HILTON (STATE BAR NO. 156524)
   (e-mail lhilton@oneil-llp.com)
2  WILLIAM E. HALLE (STATE BAR NO. 150686)
   JENNIFER SUN (STATE BAR NO. 238942)
3  O'NEIL LLP
   19900 MacArthur Boulevard
4  Suite 1050
   Irvine, California 92612
5  Telephone: (949) 798-0500
   Facsimile: (949) 798-0511
6
   Attorneys for Plaintiffs and Counterdefendants
7  HALLMARK INDUSTRIES, INC. and
   RICHARD H. CROWTHER III
8

9                UNITED STATES DISTRICT COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  HALLMARK INDUSTRIES, INC., a California corporation, and RICHARD 12  H. CROWTHER III, an individual, | Case No. CV 11-05914 RGK (SPx) |
| 13           Plaintiffs, | **FIRST AMENDED COMPLAINT FOR:** |
| 14       v. | (1) **VIOLATIONS OF THE SHERMAN ACT [15 U.S.C. §§ 1 and 2];** |
| 15  PRIME-LINE PRODUCTS COMPANY, a California corporation; 16  RICHARD H. CROWTHER, JR., an individual; DIANNE CROWTHER, an 17  individual; and DOES 1 through 10, inclusive, | (2) **VIOLATIONS OF THE CLAYTON ACT [15 U.S.C. § 14];** |
| 18         Defendants. | (3) **VIOLATIONS OF THE CARTWRIGHT ACT [Cal. Bus. & Prof. Code § 16720, et seq.];** |
| 19 | (4) **VIOLATIONS OF THE CALIFORNIA UNFAIR PRACTICES ACT [Cal. Bus. & Prof. Code § 17000, et seq.];** |
| 20  AND RELATED COUNTERCLAIMS. | (5) **BREACH OF CONTRACT;** |
| 21 | (6) **BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING;** |
| 22 | (7) **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP;** |
| 23 | (8) **TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;** |
| 24 | |
| 25 | (9) **DECLARATORY RELIEF (PRIME-LINE STOCK OWNERSHIP); AND** |
| 26 | (10) **DECLARATORY RELIEF (EQUITABLE INDEMNITY)** |
| 27 | |
| 28 | **JURY TRIAL DEMANDED** |

#115370 v1

Plaintiffs and Counterdefendants HALLMARK INDUSTRIES, INC. and RICHARD H. CROWTHER III (sometimes collectively referred to as "Plaintiffs"), for their causes of action against Defendants PRIME-LINE PRODUCTS COMPANY, RICHARD H. CROWTHER, JR., DIANNE CROWTHER, and DOES 1 through 10, (sometimes collectively referred to as "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. section 1331 and 15 U.S.C. section 15.  Venue is proper in this District under 28 U.S.C. section 1391(b) in that one or more of the Defendants resides in this District and the events giving rise to the claims asserted herein took place within this District or had effects within this District.

## THE PARTIES

2.      Plaintiff HALLMARK INDUSTRIES, INC. ("Hallmark") is a corporation duly organized and existing under the laws of the State of California, having its principal place of business in the County of San Bernardino, State of California.

3.      Plaintiff RICHARD H. CROWTHER III ("Rich") is an individual residing in the County of San Bernardino, State of California.  Rich is the owner of 2.57% of the common shares of Prime-Line Products Company, and also owns 20,498 shares of the Company's Employee Stock Ownership Plan (the "ESOP").

4.      Plaintiffs are informed and believe and, on that basis, allege that Defendant PRIME-LINE PRODUCTS COMPANY ("Prime-Line" or the "Company") is a corporation organized and existing under the laws of the State of California, having its principal place of business in the County of San Bernardino, State of California.

5.      Plaintiffs are informed and believe and, on that basis, allege that Defendant RICHARD H. CROWTHER, JR. ("Dick") is an individual residing in the

1  County of San Bernardino, State of California.  At all times material to the
2  allegations herein, Dick has been a shareholder, Chairman of the Board of Directors
3  and Chief Executive Officer of Prime-Line.

4      6.      Plaintiffs are informed and believe and, on that basis, allege that
5  Defendant DIANNE CROWTHER ("Dianne") is an individual residing in the
6  County of San Bernardino, State of California.  At all times material to the
7  allegations herein, Dianne has been Dick's spouse.

8      7.      Plaintiffs are unaware of the true names and capacities, whether
9  individual, associate, corporate, or otherwise, of Defendants Does 1 through 10,
10  inclusive, or any of them, and therefore sue said Defendants, and each of them, by
11  such fictitious names.  Plaintiffs will seek leave of this Court to amend this
12  Complaint when the same are ascertained.

13      8.      Plaintiffs are informed and believe and, on that basis, allege that unless
14  otherwise specified, each of the Defendants, at all times herein mentioned, was the
15  agent, servant, trustee, principal, employee, and/or joint venturer of the other
16  remaining Defendants, that the acts of each Defendant were within the course and
17  scope of their agency, service, and employment and with the permission and consent
18  of each other Defendant, and that each Defendant has ratified the conduct of the
19  others.

20                          **FACTUAL BACKGROUND**

21      9.      Prime-Line was founded in 1978 by Dick Crowther and George
22  Sutphen.  At all times relevant to the allegations herein, Prime-Line has been
23  engaged in the business of manufacturing, sale and distribution of window and door
24  replacement parts to retailers.  Prime-Line is the largest supplier of window and
25  door hardware in North America.

26      10.     Prime-Line established its ESOP in 1990.

27
28

#115370 v1

3

FIRST AMENDED COMPLAINT

11.     In 2000, Mr. Sutphen retired and sold his shares to Dick (80,500 shares), Rich (57,500 shares) and the ESOP (463,925 shares).  From and after 2000, Dick was the controlling shareholder of Prime-Line.

### *Rich's Employment With The Company*

12.     Rich joined Prime-Line as an employee in January 1992, and served in various positions with the Company.  In 1999, Rich became a member of the Company's Board of Directors (the "Board").  In February, 2001, the Board appointed Rich as President.  Rich served as the Company's President until November 2010.  During his tenure as President of Prime-Line, Rich developed and maintained valuable relationships with suppliers and customers of Prime-Line, and oversaw a lengthy period of growth in the Company's business, including the Company's acquisitions and asset purchases of four other companies.

13.     Repeatedly throughout Rich's tenure as President of Prime-Line, Dick, on behalf of Prime-Line and on his own behalf as controlling shareholder of Prime-Line, promised Rich that Rich's employment would continue until Dick stepped down as Prime-Line's Chief Executive Officer, and at that time Rich would be Dick's successor in running the Company.  Dick made these promises directly to Rich and also in the presence of third parties.

14.     During the entire period that Rich served as President of Prime-Line, his compensation was significantly below the market rate for individuals performing similar duties in companies with comparable sales.  A compensation consultant hired by Prime-Line confirmed that Rich's compensation was "blatantly" below market.  By contrast, the same consultant concluded that Dick's compensation as Chief Executive Officer was above the market rate for comparable executives.

15.     The Company also promised Rich that he would be entitled to deferred compensation.  Specifically, the Company promised Rich that he would be entitled to participate in a non-qualified deferred compensation plan, which would provide for a minimum Company contribution during each year of Rich's employment with

1  the Company equal to the allocation Rich would have been entitled to if he was not

2  prohibited from receiving such an allocation under the ESOP.

3        16.    Rich was willing to, and did, continue to serve as Prime-Line's

4  President despite the low compensation because he believed that Dick and Prime-

5  Line intended to honor their agreement that Rich would succeed Dick in his role of

6  running the Company when Dick retired.  Rich also believed the Company would

7  honor its promise to provide him with deferred compensation.  Rich's beliefs were

8  based on, among other things, the Company's repeated representations that it was

9  working on a deferred compensation plan and Dick's assurances to Rich that Prime-

10 Line would make Rich "a very wealthy man."

11       17.    Dick also promised Rich that Dick, as the controlling shareholder of

12 Prime-Line, would vote his shares in a manner that supported Rich's continued

13 employment with the Company and Rich's eventual succession to Dick's role in

14 running the Company.

15             *Dianne Joins Prime-Line And Begins To Disrupt The Business*

16       18.    In or around November, 2008, Dick consulted with Rich about the

17 prospect of hiring Dianne to work at the Company.  Rich did not believe it would be

18 in the best interests of the Company to hire Dianne as an employee, and he strongly

19 advised Dick not to have Dianne hired as an employee.  Plaintiffs are informed and

20 believe and, on that basis, allege that Dick also consulted with several other

21 individuals, including another executive of Prime-Line, about hiring Dianne as an

22 employee and each of the individuals advised Dick against hiring Dianne.

23       19.    Despite the advice he received, Dick informed Rich that Dianne would

24 be starting as an employee of Prime-Line beginning in early 2009, and she began

25 her employment with the Company in February, 2009.

26       20.    Within a few days of her arrival as an employee, Dianne began to

27 harass employees and create discord among the Company staff.  Among other

28 things, Dianne accused a Company employee of sending sexually explicit text

1 | messages, only to later learn that she had accused the wrong employee.  Dianne also
2 | engaged in disruptive behavior, such as screaming at Dick in the presence of
3 | Company employees, and attempting to undermine Rich's authority as the
4 | Company's President.  Dianne also demanded that Prime-Line accounting personnel
5 | approve payments by the Company for her and Dick's personal expenses.

6 |     21.    Over the ensuing months, several Prime-Line employees came to Rich
7 | to express their frustration and concern about the way they were treated by Dianne.
8 | Rich met with Dick on several occasions to discuss the effects Dianne's conduct
9 | was having on the Company.  Rich advised Dick that Dianne's actions could subject
10 | the Company to liability for employee harassment and corporate waste, and that her
11 | efforts to undermine Rich's authority could have serious adverse consequences to
12 | the Company.  However, Dick took no action to terminate Dianne as an employee or
13 | to otherwise control her behavior.

14 |     22.    By March, 2010, Rich was sufficiently concerned about Dianne's
15 | behavior and the damage it could case the Company that he believed it was
16 | appropriate to formally notify the remaining members of the Board.  On March 31,
17 | 2010, Rich sent a memorandum to Bob Hiamshon and David Johanson detailing
18 | some of Dianne's actions and his efforts to resolve the problem with Dick.

19 |     23.    Messrs. Hiamshon and Johanson met with Dick and Dianne and came
20 | up with the framework of a plan that would result in both Dick and Dianne leaving
21 | their employment at Prime-Line, with Dick staying on in a consulting capacity.
22 | However, the plan was not implemented and, by June, 2010, the problems had not
23 | been resolved.

24 |     24.    On June 18, 2010, Dianne left a written note with a Prime-Line
25 | employee, Pam Machain, stating: "Pam—Found out tonight people at Prime Line
26 | are afraid of me.  I have quit and Dick is joining me."  Plaintiffs are informed and
27 | believe and, on that basis, allege that Dick and Dianne left in late June for a trip to
28 | Hawaii.

25.     On July 1, 2010, Dick's long-time assistant provided Rich with her resignation.  When Rich asked the reasons for her resignation, she stated that one of the reasons was that Dianne was cruel to her and made her life at Prime-Line miserable.

26.     On July 12, 2010, Dick and Dianne returned to work, never acknowledging Dianne's written notice that they had quit.

### *Dianne Convinces Dick To Oust Rich As President Of Prime-Line*

27.     Plaintiffs are informed and believe and, on that basis, allege that during their absence from the Company, Dianne persuaded Dick that notwithstanding his and the Company's promises to Rich, Dick should use his influence to cause Rich to be terminated from Prime-Line.

28.     On July 16, 2010, Rich learned that Dick was considering interviewing candidates to replace Rich as President of the Company.

29.     On July 22, 2010, Rich left for a family vacation in New Hampshire. While away on vacation, Rich learned that Dick had interviewed an individual named Ron Turk to take over Rich's position at the Company, and Dick was attempting to schedule a Board meeting during Rich's absence to approve Mr. Turk's hiring.

30.     Dick's efforts to schedule a Board meeting in Rich's absence were unsuccessful, and the Board met on August 9, 2010 after Rich returned from his family vacation.  Although she was neither a Board member nor an executive employee of the Company, Dianne was invited to, and did, attend the August 9, 2010 Board meeting.  At the outset of the meeting, one of the Board members, Terry Kokot, stated that he was against any effort to terminate Rich's employment, and further stated his satisfaction with the manner in which Rich had performed his duties for the Company.  Dick responded by stating that "we are not here to terminate Rich."

1   31.    At the August 9, 2010 Board meeting, Ron Turk's employment as the

2   Company President was approved.  The Board further resolved to engage in

3   negotiations with Rich regarding a new position with the Company, and placed Rich

4   on a ninety-day leave of absence during which the parties were to engage in good

5   faith negotiations.

6   32.    Although the leave of absence period was extended through November,

7   30, 2010, the Company refused to engage in any bona fide negotiations over a future

8   role for Rich.  Rather, the Company attempted to fabricate "cause" for Rich's

9   termination, including making false allegations that Rich had removed files from his

10  computer—a charge the Company's attorneys later acknowledged was untrue.

11  33.    On November 28, 2010, Rich notified the Company through his

12  counsel that he intended to return to work on December 1, 2010, the first day after

13  his leave of absence expired.

14  34.    On November 30, 2010, Mr. Turk sent a letter to Rich stating that his

15  employment with the Company was terminated effective as of November 30, 2010.

16  *Defendants Engage In Improper And Illegal Conduct*

17  *To Prevent Rich From Lawfully Competing*

18  35.    Following his termination from Prime-Line, Rich resolved to move

19  forward with his own businesses in order to make a living and provide for his

20  family.  Among other things, Rich planned to expand the business of Hallmark, a

21  company he owned jointly with Dick until September, 2010, when Dick transferred

22  his 50% ownership to Rich.

23  36.    For many years, Hallmark operated out of Prime-Line's facility in San

24  Bernardino and had a cooperative relationship through which Hallmark would

25  jointly order products with Prime-Line, and Hallmark would sell certain products to

26  Prime-Line at discounted prices.  Rich was willing to continue Hallmark's long-

27  standing cooperative arrangement with Prime-Line, including the sale of certain

28  products to Prime-Line at discounted prices, if Prime-Line wanted to do so.

37.   Rich also planned to form a venture through which he would compete with Prime-Line by continuing the relationships with vendors and customers that he had developed and maintained through his 18-year career at Prime-Line. Specifically, Rich planned to enter the market for sale and distribution of window and door replacement parts to retailers, with a specific focus on a discrete sub-market for the sale of window and door replacement parts to "maintenance and repair organizations," known in the industry as "MROs."

38.   Plaintiffs are informed and believe and, on that basis, allege that Prime-Line has at least 60% of the share of the market for the sale of window and door replacement parts to MROs in North America.  Defendants knew Rich would be a formidable competitor in that market due to his experience in the industry and the fact that he had close relationships with many of Prime-Line's vendors and customers.  Following Rich's termination by Prime-Line, Rich and Hallmark made substantial preparations to enter the market for the sale of window and door replacement parts to MROs in North America.

39.   Plaintiffs are informed and believe and, on that basis, allege that Prime-Line, acting through and under the direction of Dick and Dianne, has engaged in a course of conduct designed to use Prime-Line's dominant position in the MRO Market to exclude Rich and Hallmark from competing in that market.  Among other things, Hallmark and Rich have been informed by vendors that Prime-Line has threatened to terminate its relationship with the vendors unless they agree not to do business with Rich, Hallmark, or any company with which Rich is affiliated. Plaintiffs are informed and believe and, on that basis, allege that Prime-Line has also threatened to terminate its relationship with customers unless the customers agree not to do business with Rich, Hallmark, or any company with which Rich is affiliated.

40.   Prime-Line has also terminated its long-standing cooperative agreement with Hallmark regarding joint ordering of products and use of Prime-Line's facility.

1    41.    Defendants' attempts to exclude Rich and Hallmark from entering the

2   relevant market have been successful in that Rich has been unable to obtain products

3   for sale to customers, and has been unable to obtain orders from customers, due to

4   the exclusive dealing agreements Prime-Line has forced on its suppliers and

5   customers.  In the absence of such unlawful conduct by Defendants, Rich and

6   Hallmark would have been able to substantially increase competition in the MRO

7   Market in North America, including the expansion of output and lowering of prices

8   in the relevant market.

9                 **RELEVANT MARKETS AND EFFECTS ON COMMERCE**

10    42.    As alleged hereinabove, the relevant product market is the market for

11   sale and distribution of window and door replacement parts to retailers.  Within the

12   relevant product market is a discrete sub-market for the sale of window and door

13   replacement parts to MROs.  It is in this sub-market, referred to hereinafter as the

14   "MRO Market," where the conduct alleged hereinbelow has substantially restrained

15   competition.  The relevant geographic market consists of North America.

16    43.    Plaintiffs are informed and believe and, on that basis, allege that Prime-

17   Line is the largest supplier of window and door hardware in North America, and that

18   Prime-Line has significant market power within the MRO Market, with in excess of

19   60% of the market share in North America.

20                         **FIRST CAUSE OF ACTION**

21         **(Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 Against**

22          **Defendants PRIME-LINE, DICK, DIANNE and DOES 1 through 5)**

23    44.    Plaintiff realleges and incorporates herein by this reference as though

24   set forth in full each and every allegation contained in Paragraphs 1 through 43,

25   inclusive.

26    45.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1

27   through 5, as alleged hereinabove, constitute one or more unlawful contracts,

28   combinations or conspiracies to restrain trade in interstate commerce in the relevant

1 | product sub-market and geographic market in violation of Section 1 of the Sherman
2 | Act.

3 |     46.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1
4 | through 5, as alleged hereinabove, caused injury not only to competition but to Rich
5 | and Hallmark individually, by reason of which Rich and Hallmark have suffered
6 | actual damages in an amount to be proved at trial, which damages shall be trebled
7 | and awarded to Rich and Hallmark as provided in Section 4 of the Clayton Antitrust
8 | Act, 15 U.S.C. § 15. Plaintiffs are also entitled to recover their reasonable
9 | attorneys' fees as prevailing plaintiffs.

10 |     47.    Unless the actions of Defendants Prime-Line, Dick, Dianne and Does 1
11 | through 5, as alleged hereinabove are enjoined, competition in the relevant markets
12 | will continue to be irreparably harmed in a manner that cannot be compensated in
13 | monetary damages.

14 | **SECOND CAUSE OF ACTION**

15 | **(Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 Against**
16 | **Defendants PRIME-LINE, DICK, DIANNE and DOES 1 through 5)**

17 |     48.    Plaintiffs reallege and incorporate herein by this reference as though set
18 | forth in full each and every allegation contained in Paragraphs 1 through 47,
19 | inclusive.

20 |     49.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1
21 | through 5, as alleged hereinabove constitute a course of conduct designed to
22 | monopolize the MRO Market in North America in violation of Section 2 of the
23 | Sherman Act.

24 |     50.    In engaging in the above-described conduct, Defendants Prime-Line,
25 | Dick, Dianne and Does 1 through 5 have acted with the specific intent to destroy
26 | competition in the MRO Market in North America and, given Prime-Line's
27 | dominant market share as alleged above, there is a dangerous probability that
28 | Defendants' efforts will succeed.

1     51.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1
2  through 5, as alleged hereinabove, have caused injury not only to competition but to
3  Hallmark and Rich individually, by reason of which Hallmark and Rich have
4  suffered actual damages in an amount to be proved at trial, which damages shall be
5  trebled and awarded to Hallmark and Rich as provided in Section 4 of the Clayton
6  Antitrust Act, 15 U.S.C. § 15.  Plaintiffs are also entitled to recover their reasonable
7  attorneys' fees as prevailing plaintiffs.

8     52.    Unless the actions of Defendants Prime-Line, Dick, Dianne and Does 1
9  through 5 as alleged hereinabove are enjoined, competition in the relevant market
10  will continue to be irreparably harmed in a manner that cannot be compensated in
11  monetary damages.

## THIRD CAUSE OF ACTION

### (Violation of the Clayton Act, 15 U.S.C. § 14 Against Defendants PRIME-LINE, DICK, DIANNE and DOES 1 through 5)

15     53.    Plaintiff realleges and incorporates herein by this reference as though
16  set forth in full each and every allegation contained in Paragraphs 1 through 52,
17  inclusive.

18     54.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1
19  through 5 as alleged hereinabove constitute unlawful agreements not to deal in the
20  goods of a competitor, in violation of the Clayton Antitrust Act, 15 U.S.C. § 14.

21     55.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1
22  through 5, as alleged hereinabove, have caused injury not only to competition but to
23  Hallmark and Rich individually, by reason of which Hallmark and Rich have
24  suffered actual damages in an amount to be proved at trial, which damages shall be
25  trebled and awarded to Hallmark and Rich as provided in Section 4 of the Clayton
26  Antitrust Act, 15 U.S.C. § 15.  Plaintiffs are also entitled to recover their reasonable
27  attorneys' fees as prevailing plaintiffs.

28

56.    Unless the actions of Defendants Prime-Line, Dick, Dianne and Does 1 through 5 as alleged hereinabove are enjoined, competition in the relevant market will continue to be irreparably harmed in a manner that cannot be compensated in monetary damages.

## FOURTH CAUSE OF ACTION

### (Violation of the Cartwright Act, Cal. Bus. & Prof. Code § 16720, et seq. Against Defendants PRIME-LINE, DICK, DIANNE and DOES 1 through 5)

57.    Plaintiff realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 56, inclusive.

58.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1 through 5, as alleged hereinabove, constitute one or more unlawful combinations of capital, skill or acts by two or more persons that have the effect of unreasonably restraining trade.

59.    The actions of Defendants Prime-Line, Dick, Dianne and Does 1 through 5, as alleged hereinabove, caused injury not only to competition but to Hallmark and Rich individually, by reason of which Hallmark and Rich have suffered actual damages in an amount to be proved at trial, which damages shall be trebled and awarded to Hallmark and Rich as provided in Section 16750(a) of the Cartwright Act, Cal. Bus. & Prof. Code § 16750(a).  Plaintiffs are also entitled to recover their reasonable attorneys' fees as prevailing plaintiffs.

60.    Unless the actions of Defendants Prime-Line, Dick, Dianne and Does 1 through 5, as alleged hereinabove are enjoined, competition in the relevant markets will continue to be irreparably harmed in a manner that cannot be compensated in monetary damages.

## FIFTH CAUSE OF ACTION

### (Violations Of Cal. Bus. & Prof. Code § 17000, et seq. Against Defendants PRIME-LINE, DICK, DIANNE and DOES 1 through 5)

61.     Plaintiff realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 60, inclusive.

62.     The actions of Defendants Prime-Line, Dick, Dianne and Does 1 through 5, as alleged hereinabove, constitute the use of threats, intimidation, and/or boycotts designed to prevent fair and honest competition in the relevant market in violation of Cal. Bus. & Prof. Code §§ 17001 and 17046.  The agreements between Prime-Line and its vendors and customers not to deal with Rich or Hallmark constitute the use of collusion in violation of Cal. Bus. & Prof. Code §§ 17001 and 17048.

63.     The actions of Defendants Prime-Line, Dick, Dianne and Does 1 through 5, as alleged hereinabove, have caused injury to Hallmark and Rich individually, by reason of which Hallmark and Rich have suffered actual damages in an amount to be proved at trial, which damages shall be trebled and awarded to Hallmark and Rich as provided in Cal. Bus. & Prof. Code §§ 17082.  Plaintiffs are also entitled to recover their reasonable attorneys' fees as prevailing plaintiffs.

64.     Unless the actions of Defendants Prime-Line, Dick, Dianne and Does 1 through 5 as alleged hereinabove are enjoined, competition in the relevant market will continue to be irreparably harmed in a manner that cannot be compensated in monetary damages.

## SIXTH CAUSE OF ACTION

### (Breach of Contract Against Defendant PRIME-LINE)

65.    Plaintiff realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 34, inclusive.

66.    Defendant Prime-Line and Rich agreed that in exchange for Rich's continued service to the Company at below-market compensation rates, Rich would (1) have continuous employment with the Company and would succeed Dick in his role of running the Company when Dick stepped down, and (2) would receive deferred compensation for each year of employment equal to the allocation Rich would have received if he was not prohibited from receiving such an allocation under the ESOP.

67.    In furtherance of that agreement (the "Prime-Line Agreement"), and in reliance on the promises made by Prime-Line, Rich performed all of the obligations required of him under the Prime-Line Agreement.  Among other things, Rich continued to faithfully and effectively perform his duties as President of the Company while being compensated at below-market rates, and Rich did not pursue other career alternatives that were available to him.

68.    Prime-Line breached the agreement with Rich by terminating Rich's employment with the Company.

69.    As a direct and proximate result of Prime-Line's breach of the Prime-Line Agreement, Rich has suffered actual damages in an amount to be proved at trial.

## SEVENTH CAUSE OF ACTION

### (Breach of Covenant of Good Faith And Fair Dealing

### Against Defendant PRIME-LINE)

70.     Plaintiff realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 34 and 65 through 69, inclusive.

71.     The Prime-Line Agreement referred to above contained an implied covenant of good faith and fair dealing, which obligated Defendant Prime-Line to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would prevent or impede Rich from performing any or all of the conditions of the contract that he agreed to perform, or any act that would deprive Rich of the benefits of the contract.

72.     Rich performed all the duties and conditions of the Prime-Line Agreement.

73.     Prime-Line knew that Rich had fulfilled all of his duties and conditions under the Prime-Line Agreement.

74.     Prime-Line breached the implied covenant of good faith and fair dealing under the Prime-Line Agreement by terminating Rich's employment with the Company intentionally, maliciously, and without probable cause, in bad faith and for reasons extraneous to the contract.  In fact, Prime-Line discharged Rich, not for reasons related to his performance, but because he was attempting to have Dianne removed as an employee due to conduct that Rich, in good faith and in a reasonable, appropriate, and businesslike manner, had determined were disruptive and harmful to the Company.

75.     Such motives were retaliatory in nature and extraneous to the employment relationship and were intended to deprive Rich of the benefits of the Prime-Line Agreement.

76.   As a direct and proximate result of Prime-Line's breach of the implied covenant of good faith and fair dealing, Rich has suffered actual damages in an amount to be proved at trial.

## EIGHTH CAUSE OF ACTION

### (Breach of Contract Against Defendant DICK)

77.   Plaintiff realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 34, inclusive.

78.   Defendant Dick and Rich agreed that in exchange for Rich's continued service to the Company at below-market compensation rates, Dick, in his capacities as a shareholder, Chairman of the Board and Chief Executive Officer of the Company, would support Rich's continuous employment with the Company and Rich's succession to Dick's role of running the Company when Dick stepped down.

79.   In furtherance of that agreement (the "Succession Agreement"), and in reliance on the promises made by Dick, Rich performed all of the obligations required of him under the agreement.  Rich continued to faithfully and effectively perform his duties as President of the Company while being compensated at below-market rates, and Rich did not pursue other career alternatives that were available to him.  Rich's actions benefited not only the Company, but Dick personally.

80.   Dick breached the Succession Agreement by failing to support Rich's continued employment with the Company, and by supporting and orchestrating his termination from the Company.

81.   As a direct and proximate result of Dick's breach of his agreement with Rich, Rich has suffered actual damages in an amount to be proved at trial.

# NINTH CAUSE OF ACTION

## (Breach of Covenant of Good Faith And Fair Dealing

## Against Defendant DICK)

82.    Plaintiff realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 34 and 77 through 81, inclusive.

83.    The Succession Agreement referred to above contained an implied covenant of good faith and fair dealing, which obligated Defendant Dick to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would prevent or impede Rich from performing any or all of the conditions of the contract that he agreed to perform, or any act that would deprive Rich of the benefits of the contract.

84.    Rich performed all the duties and conditions of the Succession Agreement.

85.    Dick knew that Rich had fulfilled all of his duties and conditions under the Succession Agreement.

86.    Dick breached the implied covenant of good faith and fair dealing under the Succession Agreement by failing to support Rich's continued employment with the Company, and by supporting and orchestrating his termination from the Company without cause, in bad faith and for reasons extraneous to the contract. In fact, Dick used his authority to cause Prime-Line to discharge Rich, not for reasons related to his performance, but because Rich was attempting to have Dianne removed as an employee due to conduct that Rich, in good faith and in a reasonable, appropriate, and businesslike manner, had determined were disruptive and harmful to the Company.

87.    Such motives were retaliatory in nature and extraneous to the employment relationship and were intended to deprive Rich of the benefits of the Succession Agreement.

88.     As a direct and proximate result of Dick's breach of the implied covenant of good faith and fair dealing, Rich has suffered actual damages in an amount to be proved at trial.

### TENTH CAUSE OF ACTION

**(Tortious Interference With Contractual Relations**

**Against Defendant DIANNE)**

89.     Plaintiff realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 34 and 65 through 88, inclusive.

90.     Defendant Dianne was aware of the Prime-Line Agreement between the Company and Rich, and was also aware of the Succession Agreement between Dick and Rich.

91.     Defendant Dianne influenced and persuaded Dick to breach his agreement (the Succession Agreement) with Rich.  Dianne also influenced and persuaded Dick in his capacity as a shareholder, Chairman of the Board and Chief Executive Officer to cause the Company to breach the Prime-Line Agreement with Rich.

92.     Dianne's actions regarding the Succession Agreement were successful in that Dick breached the Succession Agreement with Rich.

93.     Dianne's actions regarding the Prime-Line Agreement also were successful in that Dick used his positions as a shareholder, Chairman of the Board and Chief Executive Officer to cause the Company to breach the Prime-Line Agreement with Rich.

94.     As a direct and proximate result of the actions of Defendant Dianne, Rich has suffered damages in an amount to be proved at trial.

95.     The actions of Defendant Dianne, as alleged hereinabove, were done with oppression, fraud or malice within the meaning of California Civil Code section 3294 such that an award of punitive or exemplary damages is appropriate.

## ELEVENTH CAUSE OF ACTION

**(Tortious Interference With Prospective Economic Advantage Against
Defendants PRIME-LINE, DICK, DIANNE and DOES 6 through 10)**

96.     Plaintiff realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 64, inclusive.

97.     Rich has economic relationships with vendors and customers that were developed and maintained through the course of his 18-year career at Prime-Line. When Rich was terminated as an employee of Prime-Line, Rich intended to continue to work in the same industry, and Rich had a reasonable expectation that he was likely to benefit economically in the future from those relationships.

98.     Defendants Prime-Line, Dick, Dianne and Does 6 through 10, inclusive, had knowledge of Rich's relationships with the vendors and customers.

99.     Defendants Prime-Line, Dick, Dianne and Does 6 through 10, inclusive engaged in intentional, unlawful and deceptive acts designed to disrupt the economic relationships Rich had with vendors and customers; namely, to coerce and induce vendors and customers to refrain from doing business with Rich in favor of Prime-Line.

100.    The actions of Defendants Prime-Line, Dick, Dianne and Does 6 through 10, inclusive have caused actual disruption of the relationships between Rich and the vendors and customers.

101.    As a direct and proximate result of the actions of Defendants Prime-Line, Dick, Dianne and Does 6 through 10, inclusive, Rich has suffered damages in an amount to be proved at trial.

102.    The actions of Defendants Prime-Line, Dick, Dianne and Does 6 through 10, inclusive, as alleged hereinabove, were done with oppression, fraud or malice within the meaning of California Civil Code section 3294 such that an award of punitive or exemplary damages is appropriate.

103.   Unless the actions of Defendants Prime-Line, Dick, Dianne and Does 1 through 5 as alleged hereinabove are enjoined, competition in the relevant market will continue to be irreparably harmed in a manner that cannot be compensated in monetary damages.

## TWELFTH CAUSE OF ACTION

### (Declaratory Relief Against Defendant PRIME-LINE re Rich's Status as Permissible Shareholder)

104.   Plaintiff realleges and incorporates herein by this reference as though set forth in full each and every allegation contained in Paragraphs 1 through 103, inclusive.

105.   As of the date of the termination of his employment with Prime-Line, Rich owned 57,500 shares (2.7%) of Prime-Line's common stock, and 20,498 ESOP shares.

106.   At all times following the termination of his employment with Prime-Line, Rich continued to be invited to, and Rich attended, meetings of the shareholders of Prime-Line.  Rich also made requests for documents to Prime-Line in his capacity as a shareholder.  Prime-Line complied with Rich's shareholder requests, never asserting that he no longer was a shareholder of Prime-Line.

107.   On December 29, 2011, Prime-Line's counsel asserted for the first time that the provisions of the Company's Amended and Restated Articles of Incorporation, which state that "substantially all of the outstanding shares of stock" of Prime-Line shall be owned by employees, applied to Rich's holdings of 2.7% of Prime-Line's common stock and that Rich therefore was no longer a shareholder.

108.   In its Counterclaim, Prime-Line seeks a declaration that Rich is no longer a permissible shareholder of Prime-Line.

109.   Rich disputes Prime-Line's contentions regarding his status as a shareholder, and seeks a declaration that he remains a shareholder of the Company.

1  An actual controversy therefore exists and a declaration of the respective rights of

2  the parties is necessary to resolve the controversy.

3  ### THIRTEENTH CAUSE OF ACTION

4  **(Declaratory Relief Against Defendant PRIME-LINE**

5  **re Redemption and Cross Purchase Agreement)**

6      110.   Plaintiff realleges and incorporates herein by this reference as though

7  set forth in full each and every allegation contained in Paragraphs 1 through 109,

8  inclusive.

9      111.   Rich, Dick and Prime-Line are parties to a Redemption and Cross

10  Purchase Agreement dated December 29, 2000, a true and correct copy of which is

11  attached hereto as Exhibit A.

12      112.   The Redemption and Cross Purchase Agreement grants to Rich the

13  right to sell his shares of Stock to Prime-Line following the Triggering Event at the

14  Purchase Price (each of the capitalized terms have the meaning defined in the

15  Redemption and Cross Purchase Agreement), and Prime-Line is obligated to

16  purchase the Stock shares at the Purchase Price.  Rich's right to sell his Stock to

17  Prime-Line following the occurrence of the Triggering Event continues indefinitely,

18  allowing Rich to determine at his sole discretion when or if to sell his Stock to

19  Prime-Line. The Redemption and Cross Purchase Agreement does not give Prime-

20  Line the right to compel Rich to sell his Stock.

21      113.   The Triggering Event has occurred, and Rich has the actual right to sell

22  his Stock to Prime-Line at a time that he, in his sole discretion, determines will

23  result in the most favorable Purchase Price.

24      114.   Rich contends that if Prime-Line prevails on Count Ten of its

25  Counterclaim (for Declaratory Relief), it will cause Prime-Line to be in breach of

26  the Redemption and Cross Purchase Agreement in that, among other things, it will

27  deprive Rich of the right to determine when or if to sell his Stock to Prime-Line, and

28  will give Prime-Line a "call" right that does not exist under the Agreement, forcing

1   Rich to sell his Stock at an unfavorable Purchase Price and thereby causing him

2   actual damages.

3       115.   Rich has performed all obligations required of him under the

4   Redemption and Cross Purchase Agreement.

5       116.   Rich is informed and believes and, on that basis, alleges that Prime-

6   Line disputes Rich's contentions regarding the Redemption and Cross Purchase

7   Agreement.   An actual controversy therefore exists and a declaration of the

8   respective rights of the parties is necessary to resolve the controversy.

9                     **FOURTEENTH CAUSE OF ACTION**

10              **(Declaratory Relief Against Defendants DICK and DIANNE)**

11      117.   Plaintiff realleges and incorporates herein by this reference as though

12   set forth in full each and every allegation contained in Paragraphs 1 through 116,

13   inclusive.

14      118.   If Defendant and Counterclaimant Prime-Line sustained any damages

15   as alleged in its Counterclaims, such damages were caused, entirely or in part, by

16   Defendants Dick and Dianne as set forth herein.

17      119.   As alleged in the Counterclaim, most or all of the actions and

18   omissions that Prime-Line alleges in support of its claims were committed by Dick

19   and/or Dianne.   To the extent Rich had actual knowledge of such acts or omissions,

20   he objected to the acts and omissions and acted to protect the interests of the

21   Company and its shareholders.

22      120.   An actual controversy has arisen and now exists between Rich, on the

23   one hand, and Dick and Dianne, on the other hand, in that Rich contends that, as

24   between Rich and Dick and Dianne, responsibility, if any, for the damages claimed

25   in Prime-Line's Counterclaim rests entirely or partially on Dick and Dianne, and

26   that, as a result, Dick and Dianne are obligated, jointly and severally, to partially or

27   fully indemnify Rich for any sums that Rich may be compelled to pay as the result

28

1  of any damages, judgment, or other awards recovered by Prime-Line on its
2  Counterclaims.

3       121.   Rich is informed and believes and, on that basis, alleges that Dick and
4  Dianne dispute Rich's contentions.

5       122.   Rich desires a judicial determination of the respective rights and duties
6  of Rich, on the one hand, and Dick and Dianne, on the other hand, with respect to
7  the damages claimed in the Counterclaim.  In particular, Rich desires a declaration
8  of the comparative liability of Rich, on the one hand, and Dick and Dianne, on the
9  other hand for such damages, and a declaration of Dick and Dianne's responsibility
10 for comparative indemnity to Rich for any sums that Rich may be compelled to pay
11 and for which Dick and/or Dianne are determined to be responsible, entirely or in
12 part.

13      123.   Such a declaration is necessary and appropriate at this time in order
14 that Rich may ascertain his rights and duties with respect to Prime-Line's
15 Counterclaims for damages.  Furthermore, the Counterclaims of Prime-Line and the
16 claim of Rich arise out of the same transaction, and determination of both in one
17 proceeding is necessary and appropriate in order to avoid the multiplicity of actions
18 that would result if Rich is required now to defend against the Counterclaims of
19 Prime-Line and then bring a separate action against Dick and Dianne.

20                          **PRAYER FOR RELIEF**

21      **WHEREFORE**, Plaintiff prays for relief as follows:

22      1.     On the First, Second, Third, Fourth and Fifth Causes of Action, for
23 preliminary and permanent injunctive relief, for treble damages and for an award of
24 reasonable attorneys' fees;

25      2.     On the Sixth, Seventh, Eighth and Ninth Causes of Action, for
26 compensatory damages;

27      3.     On the Tenth Cause of Action, for compensatory and exemplary
28 damages;

1        4.     On the Eleventh Cause of Action, for preliminary and permanent

2  injunctive relief, for compensatory damages and exemplary damages;

3        5.     On the Twelfth Cause of Action, for a declaration that Rich continues

4  to be a shareholder of the Company;

5        6.     On the Thirteenth Case of Action, for a declaration that in the event

6  Prime-Line prevails on Count Ten of its Counterclaim, that it will be in breach of

7  the Redemption and Cross Purchase Agreement, and that Rich shall be entitled to

8  compensatory damages and reasonable attorneys' fees;

9        7.     On the Fourteenth Cause of Action, for a declaration that any damages

10  suffered by Prime-Line as a result of the claims alleged in its Counterclaims were

11  caused, entirely or in part, by Defendants Dick and Diane as set forth herein and that

12  Dick and Dianne are obligated, jointly and severally, to partially or fully indemnify

13  Rich for any sums that Rich may be compelled to pay as the result of any damages,

14  judgment, or other awards recovered by Prime-Line on its Counterclaims.

15        8.     On all Causes of Action, for costs of suit incurred herein; and

16        9.     For such other and further relief as the Court deems proper and just.

17

18  DATED:  April 2, 2012         O'NEIL LLP

19                           LAWRENCE J. HILTON

                              WILLIAM E. HALLE

20                           JENNIFER SUN

21                           By: _____

22                              Lawrence J. Hilton

23                           Attorneys for Plaintiffs and Counterdefendants

                              HALLMARK INDUSTRIES, INC. and

24                           RICHARD H. CROWTHER III

25

26

27

28

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues triable to a jury.

DATED:  April 2, 2012

O'NEIL LLP
LAWRENCE J. HILTON
WILLIAM E. HALLE
JENNIFER SUN


By: _____
          Lawrence J. Hilton

Attorneys for Plaintiffs and Counterdefendants
HALLMARK INDUSTRIES, INC. and
RICHARD H. CROWTHER III

1   <u>PROOF OF SERVICE</u>

2   **STATE OF CALIFORNIA, COUNTY OF ORANGE**

3          At the time of service, I was over 18 years of age and not a party to this action.  I
     am employed in the County of Orange, State of California.  My business address is 19900
4   MacArthur Boulevard, Suite 1050, Irvine, California 92612.

5          On April 2, 2012, I served true copies of the following document(s) described as
6   **FIRST AMENDED COMPLAINT**  on the interested parties in this action as follows:

7          Richard D. Marca, Esq.                        *Attorneys for Defendants:*
            Gresham Savage Nolan & Tilden, PC            *Richard H. Crowther, Jr. and Dianne*
8          3750 University Avenue, Suite 250            *Crowther*
            Riverside, CA 92501-3335

9                                                        *Attorneys for Defendant*
            Marc Allaria                                 *Prime-Line Products Company*
10         James A. Stankowski
            Wilson Elser Moskowitz Edelman and
11         Dicerk LLP
            555 S. Flower Street, Suite 2900
12         Los Angeles, CA 90071

13   ☒      **BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed
     to the persons at the addresses listed in the Service List and placed the envelope for
14   collection and mailing, following our ordinary business practices.  I am readily familiar
     with O'Neil LLP's practice for collecting and processing correspondence for mailing.  On
15   the same day that the correspondence is placed for collection and mailing, it is deposited in
     the ordinary course of business with the United States Postal Service, in a sealed envelope
16   with postage fully prepaid.

17   ☐      **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the
     document(s) to be sent from e-mail address  to the persons at the e-mail addresses listed in
18   the Service List.  I did not receive, within a reasonable time after the transmission, any
     electronic message or other indication that the transmission was unsuccessful.
19
     ☐      **BY OVERNIGHT DELIVERY:**  I enclosed said document(s) in an envelope or
20   package provided by the overnight service carrier and addressed to the persons at the
     addresses listed in the Service List.  I placed the envelope or package for collection and
21   overnight delivery at an office or a regularly utilized drop box of the overnight service
     carrier or delivered such document(s) to a courier or driver authorized by the overnight
22   service carrier to receive documents.

23          Executed on April 2, 2012, at Irvine, California.

24          I declare under penalty of perjury under the laws of the United States of America
     that the foregoing is true and correct and that I am employed in the office of a member of
25   the bar of this Court at whose direction the service was made.

26
     Shaun Simmons
27   (NAME OF DECLARANT)                                  (SIGNATURE OF DECLARANT)

28

#105256 v1